# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION



| | | |
|---|---|---|
| **WILLIAM ROGER CLEMENS** | § | |
| | § | |
| **Plaintiff** | § | |
| | § | **CIVIL ACTION** |
| **VS.** | § | **NO.** ___O8-471___ |
| | § | |
| **BRIAN McNAMEE** | § | |
| | § | |
| **Defendant** | § | |

## DEFENDANT BRIAN McNAMEE'S NOTICE OF REMOVAL

## Introduction

1.    Plaintiff is William Roger Clemens, hereinafter "*Clemens*." Defendant is Brian McNamee, hereinafter "*McNamee*."

2.    On January 7, 2008 *Clemens* sued *McNamee* for defamation in the 129th Judicial District Court of Harris County, Texas.

3.    Pursuant to 28 U.S.C. § 1441(a) and 28 U.S.C. § 1441(b), and in compliance with 28 U.S.C. § 1446 and Local Rule 81, *McNamee* timely removes the following civil state court action to the United States District Court for the Southern District of Texas, Houston Division: No. 2008-00703, *William Roger Clemens v. Brian McNamee*, in the 129th Judicial District Court of Harris County, Texas (hereinafter the "*Civil State Court Action*").

4.    Removal to the United States District Court for the Southern District of Texas, Houston Division, is proper because:

    (i)    *Clemens* is and was a citizen of Texas at the time of this removal and at the time this case was filed;

    (ii)    *McNamee* is and was a citizen of New York at the time of this removal and at the time this case was filed;

{ECBA LLP\I591\1\00003907.DOC}

(iii)    the district courts of the United States have original subject matter jurisdiction (diversity) of this action because: (a) this is a civil action between citizens of different states; and (b) the matter in controversy exceeds the sum or value of $75,000.00 exclusive of interest and costs. Diversity jurisdiction exists and existed both at the time of this removal and at the time this case was filed;

(iv)    This notice of removal is being filed within 30 days after *McNamee* was served with process and a copy of the initial pleading in this case (*Clemens' Original Petition*); and

(v)    the United States District Court for the Southern District of Texas, Houston Division, is the district court of the United States for the district and division embracing the place where the *Civil State Court Action* was filed.

28 U.S.C. § 1332(a); 28 U.S.C. § 1441(a); 28 U.S.C. § 1441(b); 28 U.S.C. § 1446(a); 28 U.S.C. § 1446(b).

### Statement Of Grounds For Removal

**A.    Civil Action Between Citizens Of Different States**

5.    *Clemens* is a citizen of Texas at the time of this removal and was a citizen of Texas at the time this case was filed. *Exhibit 1, Plaintiff's Original Petition, p. 3*. *McNamee* is and was a citizen of New York at the time of this removal and was a citizen of New York at the time this case was filed.    Therefore, there is complete diversity of citizenship between the parties. 28 U.S.C. § 1332(a).

**B.    Matter In Controversy Exceeds $75,000.00 Exclusive Of Interest And Costs**

6.    *Clemens* is plainly seeking in excess of $75,000.00 from *McNamee* exclusive of interest and costs.  This is a case of alleged defamation.  Clemens is a famous Major League Baseball pitcher.  Clemens alleges that McNamee falsely stated to the "Mitchell Commission" that Plaintiff used steroids and human growth hormones during his professional baseball career. Clemens claims that McNamee "injured Clemens' reputation and exposed him to public hatred, contempt, ridicule and financial injuries." *Id.* Exhibit 1, p.12.  Clemens alleges that his "good

{ECBA LLP\1591\1\00003907.DOC}

reputation has been severely injured" and that the alleged defamation has caused "Clemens to suffer mental anguish, shame, public humiliation and embarrassment." *Id.* at 13.

7.    It is apparent from the face of *Clemens'* original petition that Clemens is seeking a sum or value exceeding $75,000.00 exclusive of interest and costs from *McNamee*.

**C.    Original Subject Matter Jurisdiction Pursuant To 28 U.S.C. § 1332(a)/Removal Proper Pursuant To 28 U.S.C. §§ 1441(a) And 1441(b)**

8.    Because this civil action is between citizens of different states and the matter in controversy exceeds $75,000.00 exclusive of interest and costs, district courts of the United States have original subject matter jurisdiction of this action. 28 U.S.C. § 1332(a). *Exhibit 1, Plaintiff's Original Petition, p. 3.* Thus, removal is proper under 28 U.S.C. § 1441(a) and 28 U.S.C. § 1441(b).

**Timely Removal**

9.    *Clemens'* original petition is the initial pleading in this case. This notice of removal is being filed on February 11, 2008 – less than 30 days after *McNamee* was served with process and a copy of *Clemens'* original petition. Thus, this notice of removal is timely. 28 U.S.C. § 1446(b).

**Attachments**

10.    Pursuant to 28 U.S.C. § 1446(a) and Local Rule 81, *McNamee* attaches copies of the following:

| | | |
|---|---|---|
| Exhibit 1: | *Clemens'* original petition (Exhibit 1) which is the only pleading filed in the *Civil State Court Action*; |
| Exhibit 2: | Order Granting Motion for Substituted Service of Process from the *Civil State Court Action*; |
| Exhibit 3: | the docket sheet from the *Civil State Court Action*; |
| Exhibit 4: | an index of matters being filed; and |

Exhibit 5:    a list of all counsel of record, including addresses, telephone numbers, and parties represented.

11.    The judge has signed no other orders in the *Civil State Court Action*.

### Notice To Adverse Parties/Filing With Clerk Of State Court

12.    Pursuant to 28 U.S.C. § 1446(d) and promptly after the filing of this notice of removal, *McNamee* is giving written notice of this notice of removal to all adverse parties, and *McNamee* is filing a copy of this notice of removal with the clerk of the 129th Judicial District Court of Harris County, Texas—the court in which the *Civil State Court Action* was filed.

### Conclusion

13.    For the stated reasons, *McNamee* removes the Civil State Court Action to the United States District Court for the Southern District of Texas, Houston Division.

Respectfully Submitted,

DAVID R. MILLER, ATTORNEY AT LAW, PLLC
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
(713) 579-1568
FAX: (713) 579-1528

DAVID R. MILLER
Federal ID No. 7066, State Bar No. 14067500
Attorney in Charge for Defendant
Brian McNamee

OF COUNSEL:

Richard D. Emery (RE 5181)
Debra Greenberger (DG 5159)
Emery Celli Brinckerhoff & Abady LLP
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5000

{ECBA LLP\1591\1\00003907.DOC}

FAX (212) 763-5001
Admission Pro Hac Vice will be Requested

Earl Ward (EW 2875)
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5070
FAX  (212) 763-5001
Admission Pro Hac Vice will be Requested

## CERTIFICATE OF SERVICE

I hereby certify that on this 11th day of February 2008, a true and correct copy of the foregoing instrument was served upon all counsel of record in accordance with the Federal Rules of Civil Procedure, *to-wit*:

Rusty Hardin
Derek Hollingsworth
Andy Drumheller
Joe Roden
Terry Kernell
Rusty Hardin & Associates, P.C.
1401 McKinney, Suite 2250
Houston, Texas  77010
(713) 652-9000
(713)  652-9800 (facsimile)

David R. Miller

Filed
08 January 6 P6:56
Theresa Chang
District Clerk
Harris District

CAUSE NO. *2008-00703*

| | | |
|---|---|---|
| WILLIAM ROGER CLEMENS | § | IN THE DISTRICT COURT |
| **Plaintiff,** | § | |
| | § | |
| | § | |
| | § | |
| | § | |
| VS. | § | OF HARRIS COUNTY, TEXAS |
| | § | |
| BRIAN MCNAMEE | § | |
| | § | |
| **Defendant.** | § | |
| | § | *129*th |
| | § | _____ JUDICIAL DISTRICT |

## PLAINTIFF'S ORIGINAL PETITION

TO THE HONORABLE COURT:

Plaintiff William Roger Clemens ("Clemens") complains of Defendant Brian McNamee ("McNamee"), and for causes of action shows:

I.

## OVERVIEW

Brian McNamee has published to the Mitchell Commission, and to the world, the following untrue and defamatory statements about Roger Clemens:

- That in 1998, Clemens approached him and asked for McNamee's help with injecting Clemens with steroids. This statement is absolutely false and defamatory.

- That later in the summer of 1998, Clemens asked him to inject him with Winstrol, which Clemens supplied. This statement is absolutely false and defamatory.

- That Clemens is the one who gave McNamee the vials of Winstrol to inject. This statement is absolutely false and defamatory.

- That McNamee injected Clemens approximately 4 times in the buttocks over a several week period with needles that Clemens provided. This statement is absolutely false and defamatory.

- That during the 1998 season, Clemens showed McNamee a white bottle of Anadrol-50. This statement is absolutely false and defamatory.

- That during the 1998 season, Clemens told McNamee that the steroids "had a pretty good effect" on him. This statement is absolutely false and defamatory.

- That during the middle of the 2000 season, Clemens made it clear that he was ready to use steroids again. This statement is absolutely false and defamatory.

- That during the latter part of the 2000 season, McNamee injected Clemens in the buttocks 4-6 times with testosterone from a bottle labeled either Sustanon 250 or Deca-Durabolin. This statement is absolutely false and defamatory.

- That during the 2000 season, McNamee also injected Clemens four times with HGH, after explaining to Clemens the potential benefits and risks of use. This statement is absolutely false and defamatory.

- That McNamee administered the injections at Clemens' apartment in New York City. This statement is absolutely false and defamatory.

- According to McNamee, Clemens advised him in 2001 that he was again ready to use steroids. This statement is absolutely false and defamatory.

- That shortly thereafter, he injected Clemens with either Sustanon 250 or Deca-Durabolin on 4-5 occasions in Clemens' apartment. This statement is absolutely false and defamatory.

- That Clemens told him that he did not like the "belly button" shot. This statement is absolutely false and defamatory.

- That it was Clemens who made the decision as to when he would use anabolic steroids or HGH. This statement is absolutely false and defamatory.

- That Clemens used, possessed, or was injected with steroids and/or HGH in 1998, 2000, and 2001. That contention is absolutely false and defamatory.

## II.

## DISCOVERY CONTROL PLAN

1.    Pursuant to Texas Rule of Civil Procedure 190.3, Plaintiff requests that discovery be conducted under Level 3.

## III.

## PARTIES

2.    Plaintiff Roger Clemens is an individual who is a citizen of and resides in Harris County, Texas.

3.    Defendant Brian McNamee is an individual who is a citizen of and resides in New York. He can be served with process at 88 Delaware Avenue, Long Beach, New York 11561.

## IV.

## JURISDICTION AND VENUE

4.    This Court has subject matter jurisdiction because the amount in controversy exceeds the minimum jurisdictional limits of this court.

3

5.    This Court has general and specific personal jurisdiction over McNamee. McNamee is a non-resident who has purposefully availed himself of the privileges and benefits of conducting business in this State in numerous ways.    For example, McNamee has profited by frequently and regularly traveling to Texas for extended periods of time to train professional athletes over the last decade.   McNamee also intentionally made defamatory statements regarding Clemens to the Mitchell Commission, knowing that the Mitchell Report would be widely circulated and cause its greatest harm to Clemens in Texas where Clemens lives and works.

6.    Venue in Harris County is proper under Texas Civil Practice and Remedies Code §15.017 because this suit asserts a defamation claim, and because Clemens resided in Harris County when the cause of action accrued.

## V.

## FACTUAL BACKGROUND

7.    On December 13, 2007, former United States Senator George Mitchell published a report including, among other allegations, the uncorroborated accusations of Brian McNamee, a 40-year-old trainer who claimed that he had repeatedly injected Roger Clemens with steroids and Human Growth Hormone ("HGH") in 1998, 2000, and 2001. Though McNamee's allegations comprise only eight pages of a 409-page report, they captured the attention of the nation, fueled rampant speculation, and irreparably tainted the reputation of one of baseball's hardest working and most talented pitchers.

8.    The accusations made by McNamee about Clemens are false and defamatory.   According to McNamee, he originally made his allegations to federal authorities after being threatened with criminal prosecution if he did not implicate Clemens.   McNamee has stated that he later affirmed his allegations to the Mitchell

4

Commission, again only after being expressly threatened with criminal prosecution. McNamee has acknowledged that he made his allegations knowing that they would be included in the Mitchell Report and knowing that they would be disseminated throughout the United States and perhaps the world. Thus, it certainly came as no surprise to McNamee that Clemens' name was the one most prominently reported among all those included in Senator Mitchell's report.

9.      The false accusations made by McNamee, and republished in the Mitchell Report, unfairly and improperly link Clemens' performance as a pitcher in 1998, 2000, and 2001 to the use of steroids during that time. This link is untrue and maliciously ignores Clemens' consistent record-setting performances before and after this period of time.

10.     Clemens was born in Dayton, Ohio in 1962. He was one of six children raised primarily by a single mother who worked several jobs to support her family. After spending his early childhood in Dayton, Clemens moved with his family to Houston in 1977. During his high school days in Houston, Clemens became a stand-out athlete at Spring Woods High School, where he excelled in football, basketball, and especially baseball.

11.     Though Clemens was drafted by the New York Mets upon graduation from high school, he opted to attend college. When the University of Texas failed to offer him a scholarship, however, he attended San Jacinto Junior College, where he played baseball. After a stellar freshman year on the baseball field, Clemens was offered a scholarship to the University of Texas. While at Texas, Clemens led the Longhorns to a national title at the College World Series in 1983. Clemens became the first player to have his baseball uniform number retired at The University of Texas.

5

12.    Clemens was drafted in the first round by the Boston Red Sox in 1983, and quickly rose through the minor league system, making his major league debut on May 15, 1984. During his 13-year career with the Red Sox, Clemens had numerous record breaking seasons. In 1986, Clemens received the American League Most Valuable Player Award and the first of his seven Cy Young awards, all while helping the Red Sox reach the World Series. He made baseball history that same year by becoming the first pitcher to ever strike out 20 batters in a single, nine-inning game. After the game, Clemens' manager reportedly commented that "I watched perfect games by Catfish Hunter and Mike Witt, but this was the most awesome pitching performance I've ever seen." Clemens repeated that same accomplishment in 1996—becoming the only player to do so.

13.    While playing for the Red Sox, Clemens won two more Cy Young awards (1987 and 1991). Since his departure in 1996, no other Red Sox player has worn Clemens' number "21."

14.    When the Red Sox did not aggressively try to re-sign Clemens following the 1996 season, Clemens signed a multi-year contract with the Toronto Blue Jays (Red Sox general manager Dan Duquette stated, after Clemens signed with Toronto, that he wished Clemens well during the "twilight of his career"). Clemens finished the 1996 season with Boston brilliantly, and continued his dominating performance through the 1997 season with Toronto, during which he won his fourth Cy Young award and the pitching triple crown.

15.    In 1998, Clemens met Brian McNamee for the first time. Clemens was in his second year with Toronto at the time, and McNamee had just been hired by the

Toronto organization as a trainer. McNamee was hired by Toronto after working several years with the New York Yankees organization as a bullpen catcher.

16.     Clemens and McNamee soon discovered a shared intensity for grueling, military-style workouts. Clemens shared his own rigorous personal training regimen with McNamee, which McNamee helped modify. Though Clemens had experience with other personal trainers, McNamee impressed Clemens with his commitment to Clemens' disciplined work-outs.

17.     Just as he had done prior to meeting McNamee, Clemens continued his pitching dominance in 1998, winning the Cy Young award for the fifth time and a second consecutive pitching triple crown. Clemens was traded to the New York Yankees in 1999, where he helped the Yankees secure back-to-back World Series titles in 1999 and 2000. In 2000, McNamee began to aggressively lobby Clemens for a job with the Yankees in order to be back in New York with his family. That same year, the Yankees hired McNamee as an assistant trainer and McNamee began working with the Yankee players, including Clemens.

18.     Around this time, suspected steroid use by major league baseball players began drawing considerable attention. On October 1, 2000, *The New York Times* published an article by McNamee. The article, entitled "Don't be so Quick to Prejudge all that Power," was crafted by McNamee as a public rebuttal to a previous piece published by the same newspaper, which suggested improved player performance in major league baseball was attributable to steroid use. McNamee's unsolicited statements in the article he wrote reached an international audience, and he told the world in his own words that imputing steroid use to all high-performing players in the league was "unsubstantiated and unfounded." McNamee also stated that the article's

7

smear against "the improved performances of today's players is just wrong." In unambiguous terms, McNamee proclaimed that an alternative explanation for improved player performance included the fact that "[p]layers today are so much smarter when it comes to their bodies, how they work them, and what they put in them."

19.    Clemens had yet another record-breaking performance in 2001. He was the first pitcher in the history of major league baseball to begin a season with a record of 20 wins and one loss. This was his sixth 20-win campaign over the course of 17 years. He also won the Cy Young award for the sixth time. Despite his record wins and additional Cy Young award, his individual statistics that year were consistent with his overall career performance.

20.    After the 2001 season, Clemens stopped training with McNamee after he learned that McNamee was a suspect in a rape investigation in Florida (this same period of time marks the last time McNamee later contends he injected Clemens with steroids). The rape investigation in Florida, which reveals that McNamee lied to police officers and refused their requests for evidence in a situation where he denied any wrong-doing, ultimately led to his release from the Yankees organization, though no formal charges were brought against him. McNamee's termination from the Yankees and from Clemens left McNamee embittered.

21.    After the incident in Florida, McNamee complained to Clemens that he could no longer make a living as a trainer. McNamee pleaded with Clemens for work, insisting that the alleged rape in Florida was actually a life-saving attempt and that he had taken the rap for others. McNamee's explanation was totally at odds with the conclusions of the police officers conducting the official investigation in St. Petersburg, Florida. Since this was unknown to Clemens, he gave McNamee the benefit of the

doubt and eventually agreed to re-hire McNamee. Thereafter, McNamee continued to routinely come to Houston through the summer of 2007 to train Clemens. Also during this same period of time, McNamee frequently came to Texas to train other professional athletes. Significantly, McNamee has never contended that Clemens used steroids after 2001, despite their continued contact with one another.

22.    Clemens continued to pitch for the Yankees for two more seasons. In 2003, Clemens again distinguished himself by becoming the 21st pitcher ever to record 300 wins. He was also the 3rd pitcher ever to record 4,000 strike-outs. Consistent with his precedent-setting performances throughout his entire career, Clemens became the only pitcher in the history of major league baseball to record both of these record-setting feats during the same game.

23.    Clemens retired at the end of 2003, but reconsidered his decision and joined his home-town Houston Astros in 2004. Clemens' performance that year earned him an unprecedented seventh Cy Young award. He also climbed to second (behind Nolan Ryan, who retired at age 46) on the all time strike-out list and was named a starter to the National League All Star Team.

24.    Clemens re-signed with the Astros in 2005 and continued his pitching dominance. His ERA that year was a remarkable 1.87—the lowest in the major leagues and the lowest in his 22-season career. Clemens also helped lead the Astros to their first World Series.

25.    Clemens pitched one more season for the Astros, where he was again dominating as a pitcher, but because of low run support by the offense, won only seven games in an abbreviated season. He returned to the Yankees for the 2007 season where the team's pursuit of another World Series appearance ended in post-season

9

play. Clemens has since announced his intention to join the Houston Astros for his post-playing career.

26.    According to what McNamee has told others, he was first confronted by federal authorities in the summer of 2007. McNamee has stated that in June of 2007, he was contacted by federal law enforcement authorities and asked to attend an interview with them in New York City. According to McNamee, he was told that the government had strong evidence that he was delivering packages of controlled substances for Kirk Radomski and that their evidence was sufficient to secure a conviction that would send him to prison for a considerable period. Throughout a lengthy interrogation the first day, McNamee told others that he repeatedly denied that Clemens had used steroids or HGH.

27.    According to McNamee, and contrary to his lawyer's statement that he was not pressured or bullied in any way,[1] the second day of interrogation proceeded as follows:

> Listen, Brian—this is [Assistant United States Attorney Matthew] Parrella—he goes, "You have three strikes to go to jail." He goes — he goes, "You know, you're a cop." He goes, "You picked up steroids and you delivered steroids. That's a federal crime." He goes, "And if you lie to a federal agent, you go to jail." He goes, "I'm going to tell you" — my attorney just sat there. He goes, "Yesterday, you took two steps back" -- no. "You have two strikes against you to go to jail. You have one more strike." All right. So, then, they recapped what we talked about that day and then — the day before. And, then, right away, "So what about Clemens?" "Well, what do you mean?" [IRS Special Agent] Novitzky went on this big tirade because it was the biggest embarrassing thing I've ever heard from anybody. He's trying to tell me that I -- that how can I tell him that I don't know anything about steroids and Clemens with, first of all,

---

[1] Brian McNamee's lawyer, Earl Ward, was quoted in the January 5, 2008 edition of *The New York Daily News*.

what they know and then also I must not be good at what I do because I stretch him and I train him; so if I put my hands on his body, how can I not know that his body's changing by taking steroids. And, then, he threw a piece of paper at me and he goes, "Do you know how many people we've talked to?" Parrella jumped in. He goes, "We know about [sic] more about you than you know about yourself." He goes, "You're going to jail." My attorney just sat there. And they said, "Let's go back to when you first met Clemens in '98."

After this exchange, and for the first time in his life, McNamee stated that he had injected Clemens with steroids in 1998, 2000, and 2001.

28.    Following his recantation, McNamee has relayed that he magically went from a "target" in a federal criminal drug investigation to a mere "witness," so long as he continued to "toe the line." McNamee states that he gave a detailed statement in which he contended that he repeatedly injected Clemens with steroids.

29.    According to what McNamee has told others, some time after this two day interrogation, he was again contacted by federal authorities. This time, they wanted McNamee to repeat his story to the Mitchell Commission. McNamee has contended that when he initially refused to do so, he was told by the federal government that he would be moved from his "witness" status back to a "target" status and fully prosecuted. McNamee has stated that when faced again with the threat of federal prosecution, he agreed to speak with the Mitchell Commission.

30.    McNamee appeared before the Mitchell Commission with federal authorities at his side. According to what McNamee told others, his Mitchell Commission interview was conducted like a cold war era interrogation, in which a federal agent merely read to the Mitchell investigators McNamee's previously-obtained statement and then asked McNamee to confirm what he previously stated.

31.    Since McNamee's comments in the Mitchell Report were released, McNamee, through his counsel, has repeatedly republished his false statements about Clemens.

32.    McNamee has stated that he was warned repeatedly by federal authorities that his cooperation agreement required him to remain silent about his cooperation. Despite having agreed to these terms, McNamee broke his promise and spoke to others before the Mitchell Report was published.

33.    This is the background for the false and defamatory statements that form the basis of this lawsuit.

## VI.

## DEFAMATION

34.    Clemens incorporates by reference the facts set forth above. McNamee told the Mitchell Commission that he had injected Clemens with steroids and HGH, and made the other false and defamatory statements detailed above. Through his attorneys, McNamee has since publicly repeated and affirmed many of his false and defamatory statements. All of McNamee's accusations are false and defamatory *per se* because they are not true, and they injured Clemens' reputation and exposed him to public hatred, contempt, ridicule, and financial injury. McNamee made the allegations with actual malice, knowing they were false.

35.    The Mitchell Commission republished McNamee's allegations. At the time he made his false accusations to the Mitchell Commission, McNamee did recognize, and a reasonable person in McNamee's position should have recognized, that they would be communicated to other persons.

36.    The law presumes that McNamee's false, defamatory *per se* statements injured Clemens. Moreover, as a proximate result of the publication and republication of McNamee's false accusations, Clemens' good reputation has been severely injured. Finally, McNamee's false allegations have also caused Clemens to suffer mental anguish, shame, public humiliation, and embarrassment. Clemens seeks damages for these injuries from McNamee in an amount to be determined by a jury.

## VII.

## DECLARATORY JUDGMENT

37.    Clemens incorporates by reference the facts set forth above. Clemens has publicly disputed McNamee's false allegations through the internet, the print media, and on television (including the January 6, 2008 edition of *Sixty Minutes*). In response, McNamee, through his attorney, has repeatedly threatened to sue Clemens for defamation. Clemens seeks a declaration that his statements have not defamed McNamee.

## VIII.

## EXEMPLARY DAMAGES

38.    Clemens incorporates by reference the facts set forth above. Clemens is entitled to exemplary damages from McNamee because his false, defamatory statements were made maliciously and with gross negligence.

## IX.

## JURY DEMAND

39.    Clemens requests a trial by jury and tenders the requisite jury fee.

## X.

## PRAYER FOR RELIEF

40.   Clemens requests that McNamee be cited to appear and answer, and that on final trial Clemens recover judgment against McNamee for:

a.  Actual damages in a sum to be determined by the jury;

b.  A judgment declaring that Clemens has not defamed McNamee;

c.  Reasonable and necessary attorney's fees as are equitable and just;

d.  Exemplary damages in a sum to be determined by the jury;

e.  Pre- and post-judgment interest as provided by law;

f.  Costs of suit;

g.  Such other and further relief to which Clemens may be justly entitled.

Respectfully submitted,

RUSTY HARDIN & ASSOCIATES, P.C.

Rusty Hardin
State Bar No. 08972800
Derek Hollingsworth
State Bar No. 24002305
Andy Drumheller
State Bar No. 00793642
Joe Roden
State Bar No. 00794549
Terry Kernell
State Bar No. 11339020
1401 McKinney, Suite 2250
Houston, Texas 77010
(713) 652-9000
(713) 652-9800 (Facsimile)

**ATTORNEYS FOR PLAINTIFF
WILLIAM ROGER CLEMENS**

14

## CAUSE NO. 2008-00703

| | |
|---|---|
| WILLIAM ROGER CLEMENS | IN THE DISTRICT COURT OF |
| v. | HARRIS COUNTY, T E X A S |
| BRIAN McNAMEE | 129th JUDICIAL DISTRICT |

## ORDER GRANTING MOTION FOR SUBSTITUTED SERVICE OF PROCESS

ON THIS DAY came on for consideration the Plaintiff's Motion for Substituted Service

Under Rule 106(b), Texas Rules of Civil Procedure. It appears to the Court based upon the

affidavits attached to the Motion as Exhibits A, B and E that Plaintiff has attempted but failed to

personally serve Defendant, **Brian McNamee**, at his last known usual place of abode. It further

appears to the Court that the manner of service ordered herein will be reasonably effective to

give said Defendant notice of the lawsuit. It is, therefore,

**ORDERED, ADJUDGED, and DECREED** that the Motion for Substituted Service is

**GRANTED.** It is further,

**ORDERED, ADJUDGED, and DECREED** that service of process may be made upon

the above-named Defendant either (1) by leaving a true copy of the citation, with a copy of the

Petition and this Order authorizing substituted service attached, with anyone over sixteen (16)

years of age at **88 Delaware Avenue, Long Beach, NY 11561**; or (2) by firmly affixing a true

copy of the citation, with a copy of the Petition and this Order authorizing substituted service

attached, to the front door of Defendant's last known usual place of abode at the above address.

It is, further,

**ORDERED, ADJUDGED, and DECREED** that the service made by the above method

shall not be deemed perfected unless it also complies with the following provisions:

     (a) a copy of the citation, Petition, and this Order shall be mailed by BOTH
certified mail, return receipt requested, AND by regular mail to the Defendant at the same
address at which service is authorized above;

(b) the return of service shall not be made until 30 days after mailing or until the process server receives back the green card from the post office, whichever date is earlier;

(c) each return of service shall include a statement setting out the date of mailing and the result of the mailing by certified mail, and the date of mailing and result of same by regular mail (*i.e.*, whether the envelope was returned by the post office, the green card came back signed, etc.);

(d) a copy of any envelope or green card returned by the post office shall be attached to each return of service;

(e) a copy of this citation, Petition, and this Order shall be faxed and sent by regular and certified mail to Mr. Richard Emery and Mr. Earl Ward at their listed law office address simultaneously with the above requirements, *PROVIDED* that Plaintiff's best information and belief remains that these individuals represent Defendant in this cause;

It is further **ORDERED, ADJUDGED, and DECREED** that the returns of service of the person executing service pursuant to this Order shall otherwise be made in accordance with Rule 107, Texas Rules of Civil Procedure. It is, further,

**ORDERED, ADJUDGED, and DECREED** that service of process will be deemed complete upon compliance with this Order, regardless of whether Defendant signs the certified mail receipt.

SIGNED this _15th_ day of _January_, 2008.

JUDGE GRANT DORFMAN

**2008-00703**

FILED: ___01/06/2008___

CLEMENS, WILLIAM ROGER
PLAINTIFFS

HARDIN, RUSSELL JR.

_____ Attorney

## NATURE OF ACTION

DEFAMATION OF CHARACTER

VS.

MCNAMEE, BRIAN
DEFENDANTS

_____ Attorney

SURETIES ON COST BOND:

_____

_____

Jury Fee Paid By:
8972800
HARDIN, RUSSELL JR.

_____

## SETTINGS

GENERAL ORDER OF THE COURT ___129TH___

1-15-08  D/s  mtn  Substituted order.

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **WILLIAM ROGER CLEMENS** | § |
| | § |
| **Plaintiff** | § |
| | § **CIVIL ACTION** |
| **VS.** | § |
| | § **NO.** $O8 \cdot 471$ |
| **BRIAN McNAMEE** | § |
| | § |
| **Defendant** | § |

## DEFENDANT BRIAN McNAMEE'S NOTICE OF REMOVAL

### INDEX OF MATTERS BEING FILED

1.    Civil Cover Sheet.

2.    Summons in a Civil Case.

3.    Defendant Brian McNamee's Notice of Removal (including the following exhibits):

> Exhibit 1:    *Clemens'* original petition which is the only pleading filed in the *Civil State Court Action*;
>
> Exhibit 2:    Order Granting Motion for Substituted Service of Process from the *Civil Statute Court Action*;
>
> Exhibit 3:    the docket sheet from the *Civil State Court Action*;
>
> Exhibit 4:    an index of matters being filed; and
>
> Exhibit 5:    a list of all counsel of record, including addresses, telephone numbers, and parties represented.

4.    Notice of Filing Notice of Removal (No. 2008-00703, *William Roger Clemens v. Brian McNamee*, in the 129th Judicial District Court of Harris County, Texas).

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **WILLIAM ROGER CLEMENS** | § |
| | § |
| **Plaintiff** | § |
| | § |
| **VS.** | § |
| | § |
| **BRIAN McNAMEE** | § |
| | § |
| **Defendant** | § |

**CIVIL ACTION**

**NO.** _08-47/_

## INDEX OF MATTERS BEING FILED

1.   Civil Cover Sheet.

2.   Summons in a Civil Case.

3.   Defendant Brian McNamee's Notice of Removal (including the following exhibits):

   Exhibit 1:   *Clemens'* original petition which is the only pleading filed in the *Civil State Court Action*;

   Exhibit 2:   Order Granting Motion for Substituted Service of Process from the *Civil Statute Court Action*;

   Exhibit 3:   the docket sheet from the *Civil State Court Action*;

   Exhibit 4:   an index of matters being filed; and

   Exhibit 5:   a list of all counsel of record, including addresses, telephone numbers, and parties represented.

4.   Notice of Filing Notice of Removal (No. 2008-00703, *William Roger Clemens v. Brian McNamee*, in the 129th Judicial District Court of Harris County, Texas).

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION**

| | |
|---|---|
| **WILLIAM ROGER CLEMENS** §<br>§<br>**Plaintiff** §<br>§<br>**VS.** §<br>§<br>**BRIAN McNAMEE** §<br>§<br>§<br>**Defendant** § | **CIVIL ACTION**<br><br>**NO.** _0 8 4 7 /_ |

## LIST OF ALL COUNSEL OF RECORD

1.    Attorneys for Plaintiff, William Roger Clemens:

  Rusty Hardin
  Texas State Bar No. 08972800
  Derek Hollingsworth
  Texas State Bar No. 24002305
  Andy Drumheller
  Texas State Bar No. 00793642
  Joe Roden
  Texas State Bar No. 00794549
  Terry Kernell
  Texas State Bar No. 11339020
  Rusty Hardin & Associates, P.C.
  1401 McKinney, Suite 2250
  Houston, Texas 77010
  (713) 652-9000
  (713) 652-9800 (facsimile)

2.    Attorneys for Defendant, Brian McNamee

  Richard D. Emery
  New York State Bar No. RE-5181
  Debra Greenberger
  New York State Bar No. DG-5159
  Emery Celli Brinckerhoff & Abady LLP
  75 Rockefeller Plaza, 20th Floor
  New York, NY 10019
  (212) 763-5000
  (212) 763-5001 (facsimile)

1

Earl Ward
New York State Bar No. EW 2875
75 Rockefeller Plaza, 20th Floor
New York, NY 10019
(212) 763-5070
(212) 763-5001 (facsimile)

David R. Miller
Texas State Bar No. 14067500, Federal ID No. 7066
David R. Miller, Attorney at Law, PLLC
2777 Allen Parkway, 7th Floor
Houston, Texas 77019
(713) 579-1568
(713) 579-1528 (facsimile)