UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| WILLIAM ROGER CLEMENS, | § § § § | |
| Plaintiff, | § § | |
| v. | § § | CIVIL ACTION NO. 4:08-cv-00471 |
| | § § § | |
| BRIAN MCNAMEE, | § § § § | |
| Defendant. | § § | |

## MEMORANDUM AND ORDER

Before the Court are Plaintiff's Motion to Reconsider (Doc. No. 66) and Motion to Supplement Motion to Reconsider. (Doc. No. 69.) After considering the parties' filings, all responses and replies thereto, and the applicable law, the Court finds that Plaintiff's Motion to Supplement Motion to Reconsider should be granted and his Motion to Reconsider should be denied.

I.     PROCEDURAL BACKGROUND

This case arises out of Defendant's allegedly defamatory statements regarding Plaintiff's use of performance-enhancing drugs. The Court's previous order laid out the facts of the case in detail. Plaintiff accuses Defendant of falsely telling Andy Pettitte that Plaintiff had used steroids and human growth hormone (HGH). Plaintiff also alleges that Defendant made untruthful statements regarding Plaintiff's use of steroids and HGH to the Mitchell Commission and SI.com.

1

On February 12, 2009, the Court held that it could not exercise personal jurisdiction over Plaintiff's claims with respect to Defendant's alleged statements to the Mitchell Commission and SI.com. The Court further held that Defendant's statements to the Mitchell Commission should be immune from suit because they were made in the course of a government investigation. The Court also found that Defendant's statements to Pettitte did not constitute slander per se. Plaintiff now urges the Court to reconsider its decision.

II. ANALYSIS

A. Standard for Motion to Reconsider

A motion for reconsideration may be made under either Federal Rule of Civil Procedure 59(e) or 60(b). *Shepherd v. Int'l Paper Co.*, 372 F.3d 326, 328 n. 1 (5th Cir. 2004). Such a motion must "clearly establish either a manifest error of law or fact or must present newly discovered evidence. These motions cannot be used to raise arguments which could, and should, have been made before the judgment issued." *Ross v. Marshall*, 426 F.3d 745, 763 (5th Cir. 2005) (citing *Simon v. United States*, 891 F.2d 1154, 1159 (5th Cir. 1990)). In considering a motion for reconsideration, a court "must strike the proper balance between two competing imperatives: (1) finality, and (2) the need to render just decisions on the basis of all the facts." *Edward H. Bohlin Co. v. Banning Co.*, 6 F.3d 350, 355 (5th Cir. 1993). Plaintiff does not specify the federal rule under which he urges his Motion. Because Plaintiff's Motion was filed more than ten days after the Memorandum and Order, and because there has not been a trial in this matter, the Court will apply the Rule 60(b) standard.

B. Immunity

Plaintiff questions the Court's holding that Defendant's statements to the Mitchell Commission should be immune because he made them during the course of a government

investigation.[1] Plaintiff reasserts his position that Defendant's statements to the Mitchell Commission were made to a private individual conducting a private investigation. At the same time, Plaintiff recognizes that Defendant was speaking to the Mitchell Commission at the behest of the United States Attorney's Office (USAO) and the Federal Bureau of Investigation (FBI). Plaintiff then introduces a new policy argument, based on an article by Professor Frank Bowman published in Slate.com, and an article by sports writer Josh Peter, published on Yahoo Sports. (Pl. Mot. Ex. A-B.) These articles argue that it is dangerous to allow prosecutors to coerce witnesses "to speak publicly about matters that are the subject of a criminal investigation." (Pl. Mot. at 4.) Bowman opines that criminal defendants will have no forum in which to defend themselves when government entities influence the content of private sector reports. Plaintiff acknowledges that there is little this Court can do to control prosecutors who use such "questionable tactics"; nevertheless, Plaintiff argues that the Court should not "incentivize" such behavior. Plaintiff predicts that the ultimate result of the Court's decision is that there will be "nothing to stop the government from forcing individuals to go on the nightly news and accuse people of committing crimes the government never intends to prosecute." (Pl. Mot. at 6.) The government's admonition to witnesses that they must tell the truth, or face perjury charges, allows the government effectively to become "the sole arbiter of what is true and what is not." (Pl. Mot. at 7.)

Plaintiff cites no legal authority that is contrary to the Court's holding, which is based on the Fifth Circuit's decision in *Shanks v. AlliedSignal, Inc.*, 169 F.3d 988, 994 (5th Cir. 1999).

---

[1] As an initial matter, Plaintiff is not challenging the Court's holding regarding its lack of personal jurisdiction over Defendant with respect to his statements to Mitchell and SI.com. Therefore, regardless of whether the Court reconsiders its decision that Defendant's statements to Mitchell should be protected, it still cannot exercise jurisdiction over Plaintiff's claims regarding these statements.
     The Court also notes that Plaintiff has correctly pointed out that *Thomas v. Bracey*, 940 S.W.2d 340 (Tex. App.—San Antonio 1997, no pet.), was a decision of the Texas Court of Appeals, not the Texas Supreme Court. The Court's previous misstatement, however, does not affect its ruling.

The *Shanks* Court held that a witness cannot be prosecuted for statements made during the course of a government investigation. The Fifth Circuit did not limit its holding to situations where the government investigation ultimately leads to a prosecution.[2] As Defendant argues, immunity is meant to encourage witnesses to be candid when speaking with government officials who will ultimately decide what to do with the information they collect. The Court does not agree with Plaintiff's argument that perjury laws allow prosecutors to act as the sole arbiters of the truth; rather, these laws encourage reluctant witnesses who, like Defendant, have an economic incentive to be dishonest, to instead tell the truth. *See Darrah v. Hinds*, 720 S.W.2d 689, 691 (Tex. App.—Fort Worth, 1986, ref. n.r.e.) (citing *James v. Brown*, 637 S.W.2d 914, 917 (Tex. 1982)). Further, Plaintiff's concern about prosecutors' improper use of witness statements to destroy a suspect's reputation is not an issue before this Court. If Plaintiff believes that either the federal investigators or the Mitchell Commission overstepped the bounds of the law, he is free to bring suit against those entities, subject to possible immunity defenses. This Court, however, is solely concerned with the behavior of Defendant. The Court will not accept Plaintiff's invitation to thwart the government's allegedly coercive behavior by punishing Defendant, who was the target of that behavior.

Plaintiff then argues that the Court did not find, and that the evidence does not demonstrate, that Defendant's statements were made in the due course and furtherance of a

---

[2] Texas courts have also applied judicial immunity to statements made "in contemplation of and preliminary to judicial proceedings." *See Daystar Residential, Inc. v. Collmer*, 176 S.W.3d 24, 28 (Tex. App.—Houston [1st Dist.] 2004, pet. denied) (holding that attorney's statements made in anticipation of a proposed or existing judicial proceeding are immune from prosecution) (citing *Watson v. Kaminski*, 51 S.W.3d 825, 827 (Tex. App.-Houston [1st Dist.] 2001, no pet.) (same)). In Plaintiff's original briefing, he argued that the privilege applicable to statements made by attorneys is different from "witness privilege." The Court of Appeals in *Daystar*, however, while deciding facts involving an attorney's statement, noted that the judicial proceeding privilege "extends to any statements made by the judges, jurors, counsel, parties, or witnesses and attaches to all aspects of the proceedings, including statements made in open court, pre-trial hearings, depositions, affidavits, and any of the pleadings or other papers in the case." *Daystar*, 176 S.W.3d at 27.

4

federal investigation. Plaintiff contends that showing Defendant was coerced does not prove, functionally, how or why the interviews were in the due course and furtherance of the investigation. Plaintiff then points, once again, to a statement from former Senator George Mitchell, in which he claims that the USAO is not using the Mitchell Commissions' investigation to do their work for them. Plaintiff argues that having Defendant repeat statements to Mitchell does not further the USAO's investigation, and that Defendant's discussions with the Mitchell Commission only benefitted Defendant by preventing him from becoming a target. Plaintiff argues that, without evidence of how or why having Defendant speak to the Mitchell Commission furthered the federal investigation, this Court should not treat the interviews as part of it.

The cases cited by Plaintiff in which Texas courts found that statements were not related to the judicial proceeding are distinguishable from the facts before the Court. *Frith v. Shupp* involved a conversation between two parties to a pending lawsuit in which the defendant tried to dissuade the plaintiff from pursuing her claims. No. 05-01-01606-CV, 2002 WL 1981382 (Tex. App.—Dallas Aug. 29, 2002, no pet.). The parties did not discuss the merits of the case or the possibility of settlement, and the conversation occurred in the defendant's private office. In the instant case, Defendant's conversation with the Mitchell Commission occurred in a law office, with attorneys, prosecutors, and law enforcement present. He discussed facts related to the government's investigation, and the discussion occurred at the government's direction. Plaintiff also cites *Burzynski v. AETNA Life Insurance Co.*, 967 F.2d 1063 (5th Cir. 1992). The plaintiff, a physician, sued the defendants who, during the discovery process of a state court lawsuit, sent a mass mailing to companies whose relationship to the litigation was "hypothetical at best" in which they sought to persuade the companies not to do business with the plaintiff. This case is

likewise distinguishable because Defendant's statements were related to the government's investigation.

Plaintiff would require Defendant to explain how his statements furthered the government's investigation and to expose the prosecutor's motives for requiring him to speak to the Mitchell Commission in order to maintain his witness status. The Court does not believe that burden should be placed on Defendant. He has introduced an affidavit from an Assistant United States Attorney representing that Defendant's statements were compelled as part of an ongoing government investigation into the distribution of anabolic steroids, HGH, and money laundering, facts Plaintiff has not contested. (Doc. No. 63.) The Court finds this evidence to be sufficient.

Plaintiff has supplemented his motion for reconsideration with one new document, a government brief opposing the defendant's motion for new trial in the case of *USA v. Tammy Thomas*, Docket Number 6-CR-0803, a prosecution pending in the Northern District of California. (Doc. No. 69, Ex. 1.)[3] Plaintiff submits this brief in support of his argument that prosecutors never intended to charge Plaintiff as part of the federal investigation. Plaintiff highlights the portions of the brief in which the government states that professional athletes are not targeted for mere steroid use.

In that case, Defendant Tammy Thomas, a former cyclist, was charged with making false declarations to a grand jury and obstruction of justice. Thomas testified before a grand jury in 2003 in connection with an investigation of Balco Industries, which allegedly manufactured performance enhancing drugs and laundered money. Balco employees eventually pled guilty to distributing the drugs. Thomas testified regarding her knowledge of Balco and its employees, subject to an immunity agreement. The government then charged her with committing perjury

---

[3] Because the brief was not made available to the public until after Plaintiff filed his Motion for Reconsideration, the Court will grant Plaintiff's Motion to Supplement.

before the grand jury, specifically by denying that she had ever used drugs from Balco or any other anabolic steroid.

The brief does not support Plaintiff's position, for two reasons. First, the fact that government investigators were not specifically targeting Plaintiff does not mean that Defendant's answers to their inquiries about Plaintiff's drug use were not related to a government investigation of some other person or entity. Second, while the brief indicates that the government does not prosecute athletes solely for using steroids, it acknowledges that the government does investigate athletes for the possible distribution of steroids, and, as the *Thomas* case indicates, athletes who lie about steroid use under oath.

Plaintiff does cite, for the first time in his Motion for Reconsideration, one authority that gives the Court pause. In *Alaniz v. Hoyt*, the Texas Court of Appeals held that a math professor who had made allegedly defamatory statements regarding a university's chief financial officer had qualified immunity from suit because the plaintiff was a public official and the defendant's statements were made to those with a common or business interest in their contents. 105 S.W.3d 330 (Tex. App.—Corpus Christi 2003) *overruled on other grounds by Fort Brown Villas III Condominium Assoc., Inc. v. Gillenwater*, --- S.W.3d ---, 2009 WL 1028047 (Tex. Apr. 17, 2009). The Court of Appeals found that the defendant later waived his immunity, however, by publicly repeating his statements to third parties.

While the Court considers Defendant's statements to the Mitchell Commission to be protected, because they were made at the behest of federal prosecutors, it is possible that his later statements to SI.com were not made under similarly coercive circumstances. In order to evaluate whether Defendant waived his immunity by repeating his statements to SI.com, the Court would have to evaluate whether Defendant's statements to SI.com constituted "a significant part" of his

protected statements to Mitchell and the factual circumstances relating to these statements. *See Alaniz*, 105 S.W.3d at 343 (citing *Terrell State Hosp. of the Tex. Dept. of Mental Health and Mental Retardation v. Ashworth*, 794 S.W.2d 937, 940 (Tex. App.—Dallas 1990, mand. motion overr.)). Because the Court has already determined that it does not have jurisdiction over Defendant with respect to either his statements to Mitchell or SI.com, and because Plaintiff did not advance this argument in the original briefing, the Court will not undertake such an inquiry.

### C. Slander Per Se

Plaintiff's final argument is that the Court erred by finding that Defendant's statements to Pettitte did not constitute slander per se. While the Court did find that Plaintiff satisfied the threshold inquiry of whether Defendant's statements were defamatory, it found that these statements did not constitute slander per se.

The standard for determining if a statement is slander per se is stricter than that used to determine if it is reasonably capable of defamatory meaning. To assess a statement's defamatory meaning, courts are required to consider the defamatory statement "as a whole, in light of surrounding circumstances, based upon how a person of ordinary intelligence would perceive the entire statement." *Moore v. Waldrop*, 166 S.W.3d 380, 385 (Tex. App.—Waco 2005, no pet.) (citing *New Times, Inc. v. Isaacks*, 146 S.W.3d 144, 154 (Tex. 2004)). Similarly, when determining if a statement should be considered slander per se, the initial inquiry is "what construction would be placed upon such language by the average reasonable person or the general public, not by the plaintiff." *Id.* at 386 (citing *Schauer v. Memorial Care Syst.*, 856 S.W.2d 437, 448 (Tex. App.—Houston [1st Dist.] 1993, no writ)). If the statement seen in this light has but one clear and obvious meaning, then the statement is slander per se. *Id.* (citing *Gray v. HEB Food Store No. 4*, 941 S.W.2d 327, 329 (Tex. App.—Corp. Christi 1997, writ

denied)). However, for the purposes of determining if a statement is slander per se, if the statement is ambiguous, or if the full effect of the statement cannot be understood without extrinsic evidence, then the trial court must consider the explanatory circumstances. *Id.* at 386 (citing *Montgomery Ward & Co. v. Peaster*, 178 S.W.2d 302, 305 (Tex. Civ. App.—Eastland 1994, no writ)). Once the court considers extrinsic evidence and innuendo, the statement becomes slander *per quod*, because innuendo not only reflects the meaning of the statement but also "illuminates the amount of harm the plaintiff may have suffered." *Id.* at 386.

The Court does not believe that Defendant's statements to Pettitte have "one clear and obvious meaning" that Plaintiff was committing a crime. That is certainly one reasonable interpretation of the statements—which is why the Court found that they were capable of defamatory meaning. In order to arrive at the conclusion that the statement implicates Plaintiff in a criminal act, however, the Court has to consider the extrinsic evidence of Plaintiff's status as a professional baseball player. It is this consideration which makes the statements, at best, slander *per quod*.[4]

### D. Pendent Jurisdiction

Plaintiff urges the Court to exercise its pendent jurisdiction over his claims related to Defendant's statements to Mitchell and SI.com because they arise from the same "common nucleus of operative facts" as his claims arising from Defendant's statements to Pettitte. The

---

[4] In Plaintiff's Motion for Reconsideration, he cites a number of cases in which courts in other states have found that statements regarding a party's drug use amounted to slander per se. In two of these cases, both decided under Pennsylvania law, the courts considered innuendo to determine that a statement was slander per se, which is not permitted under Texas law. *See Klump v. Nazareth Area High Sch. Dist.*, 425 F.Supp.2d 622, 638 (E.D.Penn. 2006) and *Brinich v. Jencka*, 757 A.2d 397, 397 (Pa. Super. Ct. 2000). The statements at issue in *Larson v. Decatur Memorial Hosp.* implicated illegal behavior—defendant informed a supervisor that the plaintiff was buying and selling "pot," which is illegal in Illinois. 602 N.E.2d 864 (Ill. App. Ct. 1992). Finally, in *Fourcade v. City of Gretna* and *Ultimate Creations, Inc. v. McMahon*, two cases in which the court used a standard similar to that in Texas, the statements at issue indicated that the defendants not only used steroids, but did so illegally. 598 So.2d 415, 421 (La. Ct. App. 1992); 515 F.Supp.2d 1060, 1067 (D.Az. 2007). In *Fourcade*, the defendants said the plaintiff had "got thrown out for using steroids" and in *Ultimate*, the defendants said that the plaintiff had "violated a stringent drug policy." These statements are distinguishable from the instant case because they have one obvious meaning—not that the plaintiff was using steroids, but that his use was unauthorized.

factual basis of the claims are quite distinct—Defendant made the statements to different audiences, at different times and in different contexts. Further, as explained in the Court's earlier order, the Fifth Circuit dictates that a plaintiff bringing multiple claims arising out of different forum contacts of the defendant must establish specific jurisdiction for each claim. *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274 (5th Cir. 2006). Since Plaintiff was unable to establish specific jurisdiction for these claims, the Court will decline to exercise its pendent jurisdiction to hear them.

### III.  CONCLUSION

For the reasons above, Plaintiff's Motion to Supplement Motion to Reconsideration is **GRANTED**; Plaintiff's Motion for Reconsideration is **DENIED**.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas, on this the 30th day of June, 2009.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE

**TO ENSURE PROPER NOTICE, EACH PARTY WHO RECEIVES THIS
ORDER SHALL FORWARD A COPY OF IT TO EVERY OTHER PARTY
AND AFFECTED NON-PARTY EVEN THOUGH THEY MAY HAVE BEEN
SENT ONE BY THE COURT.**